UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Timothy Scully,
        Claimant

                                    Case No. 16-cv-525-SM
        v.                          Opinion No. 2018 DNH 003

Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
        Defendant


**O R D E R**


    Pursuant to 42 U.S.C. §§ 405(g), claimant, Timothy Scully,

moves to reverse or vacate the Acting Commissioner's decision

denying his applications for Disability Insurance Benefits under

Title II of the Social Security Act (the "Act"), 42 U.S.C.

§ 423.  The Acting Commissioner objects and moves for an order

affirming her decision.


    For the reasons discussed below, claimant's motion is

denied, and the Acting Commissioner's motion is granted.


**Factual Background**

I.   Procedural History.

    In July of 2014, claimant filed applications for Disability

Insurance Benefits ("DIB"), alleging that he was disabled and

had been unable to work since February 22, 2014. That application was denied on February 18, 2015, and claimant requested a hearing before an Administrative Law Judge ("ALJ").

On March 18, 2016, claimant, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's application de novo. On April 20, 2016, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, through the date of his decision. Claimant then requested review by the Appeals Council, and submitted additional documentation from Ashok Shah, M.D., in support of his claim. The Appeals Council denied claimant's request for review, and found that the additional information provided by claimant did not show a reasonable probability that, either alone or when considered with the other evidence of record, would change the outcome of the ALJ's decision. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion to Reverse Decision of the Commissioner" (document no. 9). In response, the Acting

Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 11). Those motions are pending.

## II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

### I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it
is something less than a preponderance of the evidence, so the
possibility of drawing two inconsistent conclusions from the
evidence does not prevent an administrative agency's finding
from being supported by substantial evidence.  Consolo v.
Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also
Richardson v. Perales, 402 U.S. 389, 401 (1971).


II.  The Parties' Respective Burdens.

     An individual seeking DIB benefits is disabled under the
Act if he is unable "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).
The Act places a heavy initial burden on the claimant to
establish the existence of a disabling impairment.  See Bowen v.
Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of
Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To
satisfy that burden, the claimant must prove, by a preponderance
of the evidence, that his impairment prevents him from
performing his former type of work.  See Gray v. Heckler, 760
F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp.
808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an

inability to perform his previous work, the burden shifts to the
Commissioner to show that there are other jobs in the national
economy that he can perform, in light of his age, education, and
prior work experience.  See Vazquez v. Secretary of Health &
Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20
C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,
6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if
his:

> [P]hysical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability, February 22, 2014, through his date last insured, December 31, 2014. Admin Rec. at 67. Next, he concluded that claimant suffers from the following severe impairments: "bipolar disorder with anxious stress (variously diagnosed as depression and major depressive disorder), polysubstance abuse in remission, and asthma/chronic obstructive pulmonary disease." Admin. Rec. at 68. But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1 of the regulations. Id. at 70.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can tolerate occasional exposure to dust, odors and fumes, and can tolerate frequent exposure to both extreme heat and extreme cold. He can tolerate frequent exposure to supervisors, and when dealing with changes in the work setting, the claimant is limited to making simple work-related decisions." Admin. Rec. at 72. In light of those restrictions, and based on the testimony of the vocational expert, the ALJ concluded that claimant was not capable of performing his past relevant work. Id. at 77.

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's non-exertional limitations, "the claimant is capable of making a successful adjustment to other work that existed in significant numbers in the national economy." Id. at 77-78. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

**Discussion**

Claimant claims that the Appeals Council erred by denying review, when new evidence was submitted to the Council that would change the outcome of the ALJ's decision. Claimant further challenges the ALJ's decision, asserting that he erred by failing to properly evaluate and weigh all the medical and opinion evidence when determining claimant's RFC.

I.   Appeals Council Determination.

Pursuant to 20 C.F.R. § 404.970(a), the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." As mentioned above, the Appeals Council determined that the additional evidence submitted by claimant (the May 24, 2016, questionnaire completed by Dr. Shah) would not change the outcome of the ALJ's decision, and denied Scully's request for review.

Scully argues that the Appeals Council's decision was erroneous because, "in light of [Dr. Shah's questionnaire], the record as a whole does not support" the ALJ's decision. Mem. in Supp. of Mot. to Reverse at 5. According to claimant, Dr. Shah's questionnaire clarifies other evidence in the record

relating to his asthma, including Dr. Loeser's comment that
Scully has "shortness of breath, which occurs after about 10-15
minute(s) with any strenuous activity," and contradicts the
ALJ's determination that claimant had no exertional limitations
resulting from his asthma. Id. (quoting Admin. Rec. at 74).

Generally, the Appeals Council's denial of review "is not
reviewable on appeal except when the denial 'rests on an
explicit mistake of law or other egregious error.'" Williams v.
Colvin, No. 15-CV-416-JD, 2016 WL 916415, at *2 (D.N.H. Mar. 10,
2016) (quoting Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)).
"In that exceptional circumstance, the reason for denying review
must be both articulated and 'severely mistaken'." Id (quoting
Mills, 244 F.3d at 5).

Here, claimant fails to sufficiently establish that the
Appeal's Council committed an "egregious error" by denying
review. Mills, 244 F.3d at 5; see also Roberson v. Colvin, No.
13-CV-265-JD, 2014 WL 243244, at *4 (D.N.H. Jan. 22, 2014)
("when the Appeals Council considers new evidence but concludes
that it would not provide a basis for changing the decision,
that conclusion is not egregiously mistaken as long as record
evidence supports the decision.") (collecting cases).

Scully's date last insured was December 31, 2014. Therefore, to be eligible for benefits, he was required to establish disability by that date. See McFall v. Colvin, No. 15-CV-160-PB, 2016 WL 900641, at *4 (D.N.H. Mar. 9, 2016) ("a claimant is not entitled 'to disability benefits unless [s]he can demonstrate that h[er] disability existed prior to the expiration of h[er] insured status.'") (quoting Cruz Rivera v. Secretary of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) and citing 20 C.F.R. § 404.131(a)). As the Acting Commissioner points out, Dr. Shah's May 2016 questionnaire is an assessment of Scully's limitations as of May 2016, not of Scully's limitations a year and a half earlier. Cf., McFall v. Colvin, 2016 WL 900641, at *4 ("It is not enough 'for a claimant to establish that her impairment had its roots before the date that her insured status expired.' Instead, 'the claimant must show that her impairment(s) reached a disabling level of severity' before her [date last insured].") (quoting Moret Rivera v. Secretary of Health & Human Servs., 19 F.3d 1427, 1994 WL 107870, at *5 (1st Cir. 1994) (Table)).

While "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question of whether claimant's impairment(s) reached disabling severity before claimant's insured status

expired," <u>Moret Rivera</u>, 1994 WL 107870, at *5, the record here makes clear that the ALJ carefully considered Dr. Shah's contemporaneous treatment records (records upon which, presumably, his May 2016 questionnaire was, at least in part, based) when making his determination. <u>See</u> Admin. Rec. at 70, 74. That evidence supports the ALJ's finding that claimant's asthma condition was well-controlled with treatment.

For example, a letter prepared by Dr. Shah on September 18, 2014, notes that claimant's condition "improved significantly" with Xolair treatment, but, after losing his job, claimant had not "been able to get his medications," and "has been feeling worse," with well below normal pulmonary function tests. Admin. Rec. at 474. The letter continues: "With treatment[,] his conditions would improve." <u>Id</u>. Dr. Shah's treatment records reflect similar observations and findings. <u>See</u>, <u>e.g.</u>, Admin. Rec. at 478 (May 29, 2014, medical record noting that claimant "[r]an out of all medication," and "asthma is worse lately"); <u>id</u>. at 477 (Feb. 11, 2014, medical record noting "not filling Rx due to cost," and "[a]sthma worse lately"). And, while treatment records from claimant's primary care providers reference his asthma as a long-standing condition, those records rarely mention its exacerbation, instead frequently noting claimant's "unlabored respiratory effort,[and] normal chest

expansion." See, e.g., Admin. Rec. at 399 (Sept. 9, 2014), id. at 407 (Apr. 9, 2014); id. at 411 (Feb. 13, 2014), id. at 416 (Oct. 17, 2013, observing "normal breath sounds, no wheezes, no rales, no rhonchi, unlabored respiratory effort, normal chest expansion"); id. at 421 (July 1, 2013, same)). Those medical records that do observe exacerbation of claimant's asthma consistently note that claimant has not taken his prescribed medication (Admin. Rec. at 356-363 (Jul. 7, 2014); id. at 628 (Feb, 11, 2015)), or that claimant had previously been "getting special shots twice a month for his asthma which were controlling his symptoms quite nicely." See, e.g., Admin. Rec. at 402 (August 19, 2014). Indeed, claimant himself testified concerning his asthma, as long as he is "taking the [Xolair] injections, things are okay." Admin. Rec. at 109. Accordingly, the record evidence provides considerable support for the Appeals Council's determination.

For all those reasons, claimant has not sufficiently established that the Appeals Council was egregiously mistaken in denying review.

II. Substantial Evidence Supports the ALJ's RFC Determination.

Next, claimant asserts that ALJ's RFC determination is not supported by substantial evidence because the RFC does not adequately account for his asthma/COPD or shoulder impairments.

In support of that argument, claimant contends that the ALJ erred by relying upon the reports of Dr. Loeser and Dr. Jaffe.

A. The ALJ's Reliance on Dr. Loeser's Report

Claimant argues that, because Dr. Loeser's report mentions that Scully has shortness of breath after performing strenuous activity (Admin. Rec. at 496), that report instead supports a finding that claimant is limited in terms of strenuous work.

Dr. Loeser's report states:

The patient notes the symptoms related to his [asthma] first began about 33 years ago, without known trauma or related surgeries.  The patient notes the symptoms have been relatively consistent over this time period. Currently, the patient notes episodic shortness of breath, which occurs after about 10-15 minute(s) with any strenuous activity.  Overall, the patient notes his asthma symptoms are well controlled with his current medications.

Admin. Rec. at 496 (emphases added).  So, the shortness of breath noted in Dr. Loeser's report was actually self-reported by claimant, not observed by Dr. Loeser.  Instead, Dr. Loeser observed that claimant "moved with ease around the examination room without any apparent deficits or impairments."  Admin. Rec. at 498.

Claimant correctly points out that "[s]itting and walking across an exam room are certainly not the same as doing a 'good

deal' of walking, and lifting and carrying 50 pounds, or
frequently carrying [25] pounds, which are all required of
medium work." Mem. in Supp. of Mot. to Reverse at 8 (citing 20
C.F.R. § 404.1567). However, as the ALJ observed, claimant's
position that his asthma imposes exertional RFC limitations is
undermined by: (1) his statement that his asthma symptoms had
been consistent over the last 33 years, yet he had been capable
of gainful work activity for the majority of those 33 years; (2)
claimant's statement that he had been let go from his previous
job not because he was physically or mentally incapable of
performing that job, but because of his age (see Admin. Rec. at
96; see also id. at 406 ("no longer works at jail. [L]eft under
bad terms. [F]elt he was forced out by administration")); and
(3) medical evidence in the record concerning claimant's asthma
(as summarized above) characterizing the condition as well-
controlled by medication (see supra). Accordingly, the ALJ's
findings concerning claimant's asthma/COPD are supported by
substantial evidence in the record. See Admin. Rec. at 74.

    With respect to claimant's bilateral shoulder impairment,
he argues that the ALJ erroneously relied on Dr. Loeser's report
to find that he had no exertional limitations arising out of his

shoulder impairments.[1]  Dr. Loeser's report references claimant's

bilateral shoulder surgeries, and states that, upon examination,

claimant's "upper extremities" were "unremarkable."  Admin. Rec.

at 497.  But, claimant says, because Dr. Loeser's report did not

assess claimant's shoulder range of motion, strength, or his

ability to reach, that report cannot be used as support for the

ALJ's conclusion.  Claimant further argues that Dr. Loeser's

opinion provides no evidence of his limitations, as opposed to

his treatment records and statements, which "show[] a clear

pattern of limited use of his upper extremities due to shoulder

impairments."  Mem. in Supp. of Mot. to Reverse at 8.

        While claimant's argument is somewhat confusing, he

seemingly takes the position that because, upon examination, Dr.

Loeser found claimant's upper extremities "unremarkable," Dr.

Loeser's report is necessarily invalid.  To be sure, there is

evidence in the record that supports claimant's position

concerning the severity of his bilateral shoulder impairment.

See, e.g., Admin. Rec. at 709 (May 20, 2015, treatment record

from orthopedist Dr. Thut, stating that claimant's right

shoulder pain "started years ago with no known injury.  He had

[surgery] in 2010.  He did well after the surgery for about 1 or

---

[1]    Claimant seemingly does not dispute the ALJ's determination
that his bilateral shoulder impairment is non-severe.

2 years, but . . . has noticed recurrent pain. . . . He has
been having progressive worsening of this shoulder pain for
about 2-3 years now."); Admin. Rec. at 717 (July 1, 2015,
treatment record from orthopedist Dr. Thut, stating "Tim is back
due to continued bilateral shoulder pain.  The RIGHT is probably
worse than the LEFT."); Admin. Rec. at 410 (Feb. 13, 2014,
treatment record from Jean Ball APRN, stating "here for ongoing
issues with left shoulder.  [H]as been bothersome on and off for
a few years.  [C]annot recall one specific event that caused the
pain.  [S]tate[s] that over the past [six] months has been more
constant and pain more intense.").

However, there is also substantial evidence in the record
that supports a finding that, "beyond periods of recovery
following [claimant's repeated shoulder] surgeries, the claimant
did not suffer from more than mild work-related limitations from
any orthopedic impairment for any consecutive 12-month period
since the alleged onset date."  Admin. Rec. at 69.  The medical
evidence in the record suggests that, following shoulder
surgery, claimant's symptoms generally improved.  For example,
three months after claimant's November, 2010, right shoulder
surgery, his "range of motion [was] nearly full," his "strength
[was] excellent," he was in no "real pain," and doing well.
Admin. Rec. at 540.  Claimant returned to work as a corrections

officer following the surgery, and, as the ALJ observed: "[t]he fact the claimant worked for more than three years after his injuries and right shoulder surgery suggests his status post right rotator cuff repair, lateral tear and biceps tendon dislocation was not particularly limiting for him." Admin. Rec. at 69. And, aside from the period preceding claimant's second right shoulder surgery in December, 2015, the medical evidence reflects few complaints from claimant concerning his right shoulder. See, e.g., Admin. Rec. at 398; id. at 414; id. at 424; id. at 427. Similarly, following claimant's left shoulder surgery in May, 2014, he was "doing well," and stopped wearing his sling seven days after surgery. Admin. Rec. at 571-572. Such evidence is consistent with Dr. Loeser's finding that claimant's upper extremities were "unremarkable," and supports the ALJ's decision to credit Dr. Loeser's report.

"It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." Ortiz, 955 F.2d at 769. The court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Secretary of Health & Human Servs., 842 F.2d 529, 535 (1st Cir.

1988).  Here, because substantial evidence supports the ALJ's findings, claimant's arguments concerning the ALJ's reliance on Dr. Loeser's report are unpersuasive.

B. <u>The ALJ's Reliance on Dr. Jaffe's Report</u>

Claimant's argument concerning Dr. Jaffe's report is similarly unavailing.  He contends that, because Dr. Jaffe offered his opinion prior to claimant's December, 2015, shoulder surgery and subsequent treatment, the ALJ should not have relied upon it.  However, the fact that Dr. Jaffe's medical review did not encompass claimant's 2015 surgery was referenced by the ALJ, who stated:

> The non-examining State agency medical consultant, Jonathan Jaffe, M.D., reviewed this case in February 2015.  As such, Dr. Jaffe considered evidence of the claimant's multiple surgical procedures, except for the claimant's December, 2015, right shoulder surgery, which obviously occurred subsequent to his review of the evidence [<u>see</u> Admin. Rec. at 666-667], and concluded the claimant's only <u>severe</u> impairment was asthma/COPD [Admin. Rec. at 146-158; <u>id</u>. at 159 – 171].  Still, in January, 2016, the claimant was "no longer taking pain medication and report[ed] he [was] taking Tylenol as needed at [that] time," [Admin. Rec. at 737] which is not consistent with a severe level of pain.  Indeed, the claimant reported his pain was "well controlled."  [<u>See</u>, <u>e.g.</u>, Admin. Rec. at 743.] By February, 2016, although the claimant continued to "restrict use" of his right upper extremity, he was "spending time out of the sling without difficulty." [Admin. Rec. at 751.]  The claimant's motion "continu[ed] to improve weekly," and he was "very comfortable." [Admin. Rec. at 756.]  Later in February, 2016, about nine weeks after his right

shoulder operation, the claimant obtained a gym
membership at Planet Fitness, and reported his
shoulder was "a little sore as he was doing some
[upper extremity] resistance training on the
machines," and he had only "mild pain complaints."
[Admin. Rec. at 761-762.]  By March, 2016, the
claimant discontinued physical therapy because he was
"ready to continue on his own in a gym setting."
[Admin. Rec. at 765.]  The claimant was working out at
the gym, and had been "doing some work siding a
house," and working in construction generally,
including "constant hammering."  [Admin. Rec. at 733;
Admin. Rec. at 766.]  These activities completely
contradict the claimant's allegations of any more than
mild orthopedic limitations for any consecutive 12-
month period since the alleged onset date.

Admin. Rec. at 70.

As this court has previously stated:

It can indeed be reversible error for an
administrative law judge to rely on an RFC opinion of
a non-examining consultant when the consultant has not
examined the full medical record." Strout v. Astrue,
Civil No. 08-181-B-W, 2009 WL 214576, at *8 (D. Me.
Jan. 28, 2009) (citing Rose v. Shalala, 34 F.3d 13, 18
(1st Cir. 1994)). However, an ALJ may rely on such an
opinion where the medical evidence postdating the
reviewer's assessment does not establish any greater
limitations, see id. at *8-9, or where the medical
reports of claimant's treating providers are arguably
consistent with, or at least not "clearly
inconsistent" with, the reviewer's assessment. See
Torres v. Comm. of Social Security, Civil No. 04-2309,
2005 WL 2148321, at *1 (D.P.R. Sept. 6, 2005)
(upholding ALJ's reliance on RFC assessment of non-
examining reviewer where medical records of treating
providers were not "in stark disaccord" with the RFC
assessment). See also McCuller v. Barnhart, No. 02-
30771, 2003 WL 21954208, at *4 n.5 (5th Cir. 2003)
(holding ALJ did not err in relying on non-examining
source's opinion that was based on an incomplete
record where he independently considered medical
records dated after the non-examining source's
report).

<u>Ferland v. Astrue</u>, No. 11-CV-123-SM, 2011 WL 5199989, at *4
(D.N.H. Oct. 31, 2011).

Here, the ALJ reviewed claimant's medical records,
including those post-dating claimant's December, 2015, surgery,
and determined that those medical records were consistent with
Dr. Jaffe's opinion.  The ALJ capably explained that
determination with detailed citations to the record.  Indeed,
claimant fails to point to any evidence in the record
inconsistent with the ALJ's determination.  Based on the court's
review, the record supports the ALJ's conclusion.

So, in sum, the court finds that the ALJ did not err in
relying on Dr. Loeser's and Dr. Jaffee's reports in his RFC
analysis.  It is worth noting, however, that the ALJ's
determination concerning claimant's RFC did not rest solely upon
the reports of Dr. Jaffe and Dr. Loeser.  While the ALJ made
clear that he was crediting those reports, he also relied on
considerable additional evidence in the record in support of his
RFC determination.  The ALJ considered the fact that claimant
collected unemployment insurance during the period of his
alleged disability, which required him to sign documents
asserting that he was ready, willing and able to work.  Admin.
Rec. at 75; <u>see</u> <u>id</u>. at 95-96.  The ALJ considered the
circumstances surrounding claimant's departure from his previous

job, specifically, that claimant testified he was "pushed out" by his employer due to age, and did not indicate that he had any physical or mental health problems performing his job. Admin. Rec. at 75; see Admin. Rec. at 96; id. at 251; id. at 406. The ALJ noted that claimant had worked for Labor Ready Northeast, Inc., after the alleged onset date (although he earned income at less than substantial gainful activity); and had performed construction work. Admin. Rec. at 75; see e.g., id. at 467 (July 21, 2014, treatment notes from Northern Human Services, stating: "[claimant] will work odd jobs under the table to make ends meet."). Indeed, there are repeated references in the record to claimant performing construction work, or other physical labor after his alleged onset date. See Admin. Rec. at 573 (May 20, 2015, treatment record from Dr. Thut, stating: "he has been using his arm during the day doing construction."); id. at 585 (July 1, 2015, treatment record from Dr. Thut, stating: "He has been able to do some small side jobs in construction with his shoulders as they are."); id. at 468 (July 29, 2014, treatment notes from Northern Human Services, stating: "[claimant] reports feeling slightly better but is fatigued and achy as a result of doing some physical work to supplement his income."); id. at 521 (Sept. 2, 2015, Portsmouth Regional Hospital treatment records, stating: "worked as a carpenter and was unable to work for the last week prior to his admission.");

id. at 766 (Mar. 2, 2016, treatment notes from Sport and Spine Physical Therapy, stating: "Reports he has been doing some work siding a house; constant hammering causing fatigue and increased soreness.")  Finally, the ALJ noted that claimant reported in his function report that he had no issues sitting, standing or walking.  Admin. Rec. at 75; see id. at 266.

Viewing the record as a whole, the court cannot conclude that the ALJ erred in determining claimant's residual functional capacity.  Rather, the court finds that the ALJ's RFC determination is well-reasoned and supported by substantial evidence in the record.

## Conclusion

Judicial review of the ALJ's decision is both limited and deferential.  This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence – as they are in this case – the court must

sustain those findings even when there may also be substantial
evidence supporting the contrary position.  Such is the nature
of judicial review of disability benefit determinations.  <u>See,</u>
<u>e.g.</u>, <u>Tsarelka v. Secretary of Health & Human Services</u>, 842 F.2d
529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's]
conclusion, even if the record arguably could justify a
different conclusion, so long as it is supported by substantial
evidence."); <u>Rodriguez v. Secretary of Health & Human Services</u>,
647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the
[Commissioner's] findings in this case if a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support his conclusion.").

     Having carefully reviewed the administrative record and the
arguments advanced by both the Acting Commissioner and claimant,
the court concludes that there is substantial evidence in the
record to support the ALJ's determination that claimant was not
"disabled," as that term is used in the Act, at any time prior
to the date of the ALJ's decision (April 20, 2016).

     For the foregoing reasons, as well as those set forth in
the Acting Commissioner's legal memorandum, claimant's motion to
reverse the decision of the Commissioner (document no. 8) is
denied, and the Acting Commissioner's motion to affirm her

decision (document no. 11) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

       **SO ORDERED.**

                                        Steven J. McAuliffe
                                    United States District Judge

January 3, 2018

cc:  Daniel W. McKenna, Esq.
     Terry L. Ollila, AUSA